IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| J&S R.D.T. ARCHERY, INC. and JAMES J. KEMPF an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> BEAR ARCHERY, INC., <br><br> Defendant. | Case No._____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

The Plaintiffs, J&S R.D.T. Archery, Inc. ("J&S") and James J. Kempf ("Kempf" individually and collectively as the "Plaintiffs"), by and through the undersigned, bring this Complaint and Jury Demand against Defendant Bear Archery, Inc. ("Bear Archery").

## Introduction

This case involves claims for patent infringement and breach of contract against a corporate crossbow manufacturer and marketer, Bear Archery, Inc., brought by the inventor, Mr. James Kempf, and his company J&S. In 2004, Mr. Kempf submitted a patent application for a cross bow utilizing reverse draw technology, essentially pulling the launch string of the bow into the curve of the opposing limbs instead of away from them, providing a longer power stroke, more efficiency, and potentially less noise. In January 2005 Mr. Kempf filed for another patent based upon this same reverse draw technology. In May 2005, Bear Archery, J&S and Kempf entered an agreement granting Bear Archery a license for the technology. In October 2006, approximately fifteen months later, the parties agreed to terminate the licensing agreement by a formal written "Termination Agreement." Bear Archery agreed to refrain from producing, developing, manufacturing, marketing, or selling **any** RDT style cross bow based upon or using

the technology "disclosed" by J&S, Kempf or any J&S officers. Several years later, Bear Archery contacted Kempf in order to negotiate the sale of his company and any associated intellectual property. When these negotiations ultimately failed, Kempf learned Bear Archery was producing, developing, manufacturing, marketing, and selling a crossbow based upon his patented reverse draw technology. This suit seeks to enforce the Plaintiffs patent rights and the Termination Agreement.

### Parties, Jurisdiction, and Venue

1. J&S is an Iowa corporation with its principal place of business in Coralville, Iowa.

2. Kempf is an Iowa resident with his principal residence located in Coralville, Iowa.

3. Bear Archery is a Florida corporation with its principal place of business in Evansville, Indiana.

4. This action for patent infringement arises, in part, out of the patent laws of the United States, 35 U.S.C. §§ 1, *et. seq.*

5. This Court has jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has jurisdiction over the breach of contract claim in this action pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

7. Additionally, this Court has supplemental jurisdiction over the breach of contract claim in this action pursuant to 28 U.S.C. §1367(a) because the breach of contract claim arise out of the same case or controversy.

8. Venue is proper in the Southern District of Iowa pursuant to 28 U.S.C.S. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

9. The Southern District of Iowa (Davenport Division) is the proper jurisdiction district pursuant to 28 U.S.C.S. § 95 and Local Rule 3.

## Background Facts

1. On September 16, 2004, Kempf filed Patent Application 10/942,264, which after a full and fair examination, the United States Patent and Trademark Office granted this application and on February 12, 2008, duly and legally issued United States Patent No. 7,328,693, entitled "CROSSBOW" (hereinafter the "'693 Patent"). A true and correct copy of the '693 Patent is attached hereto as Exhibit 1. Since its issuance, the '693 Patent has been in full force and effect.

2. Kempf is the inventor of the '693 Patent, with full rights in and to the claims and causes of action involved herein.

3. On January 5, 2005, Kempf filed Patent Application 11/029,870, which after a full and fair examination, the United States Patent and Trademark Office granted this application and on April 29, 2008, duly and legally issued United States Patent No. 7,363,921, entitled "CROSSBOW" (hereinafter the "'921 Patent"). A true and correct copy of the '921 Patent is attached hereto as Exhibit 2. Since its issuance, the '921 Patent has been in full force and effect

4. On May 4, 2005 RDT, Kempf and Bear Archery entered into a license agreement, granting Bear Archery a license for the reverse draw technology disclosed in the applications for the '693 and '921 Patents.

5.      Some fifteen months later, on or about October 6, 2006, RDT, Kempf and Bear Archery, agreed to terminate the 2005 license agreement and executed a "Termination Agreement."  A copy of the Termination Agreement is attached hereto as Exhibit 3.

6.      Under the terms of the Termination Agreement, Bear Archery agreed to refrain from making, selling, marketing, or otherwise producing **any** RDT style crossbow based on or using **any** of the technology disclosed by RDT or disclosed in '921 patent application.

7.      In the fall of 2015, Plaintiffs became aware that Bear Archery was developing, manufacturing, marketing, and selling three crossbow models that are based on and using the technology disclosed by RDT, in violation of the Termination Agreement. These crossbow models are identified as Bear Archery Confidential Model #1, Bear Archery Confidential Model #2, and Bear Archery Confidential Model #3 in a confidential disclosure Bear Archery made to Plaintiffs subject to a confidentiality agreement executed by the parties on November 16, 2015.

8.      The accused bows products infringes the '693 Patent.

9.      Bear Archery has not negotiated a licensing agreement with Plaintiffs in order to produce this new crossbow.

10.     The Plaintiffs have informed Bear Archery of its infringing conduct, but Bear Archery has refused to stop infringing upon the '693 Patent. To the contrary, they have continued the development, manufacture, marketing, and Plaintiffs believe they are actively seeking sales (taking orders) of the infringing crossbows.

## Count I - Breach of Contract

11.     The parties were capable of contracting.

12.     The parties entered a binding contract – the Termination Agreement - on October 6, 2006.

4

13. All of the conditions precedent under the Termination Agreement have been performed.

14. Bear Archery has breached the Termination Agreement by developing a crossbow based upon and using technology disclosed by Kempf and RDT.

15. Plaintiffs have demanded that Bear Archery perform as promised but Bear Archery has refused to do so.

16. As a result of Bear Archery's breach of the Termination Agreement, Plaintiffs have suffered damages.

17. These damages exceed the minimum jurisdictional requirements for the United States District Court.

## **Count II – Patent Infringement**

18. Upon information and belief, Bear Archery is infringing upon the '693 Patent by their development for manufacture, offer for sale, and sale of crossbows identified as Bear Archery Confidential Model #1, Bear Archery Confidential Model #2, and Bear Archery Confidential Model #3 in a confidential disclosure Bear Archery made to Plaintiffs subject to a confidentiality agreement executed by the parties on November 16, 2015 (hereinafter "**Accused Bow Products**"), which incorporates the reverse draw technology as found in the '693 Patent in the United States.

19. The Accused Bow Products infringe each claim of the '693 Patent as follows:

| Claim: 1 | The Accused Bow Products (Models #1, #2, and #3 of the Bear Archery confidential disclosure to Plaintiffs based on November 16, 2015 agreement) |
|---|---|
| A bow comprising: | The Accused Bow Products are bows. |
| (a) a riser; | The Accused Bow Products include a riser. |
| (b) a first limb extending at least partially outward from said riser; | The Accused Bow Products contain a first limb extending partially outward from the riser. |
| (c) a second limb extending at least partially forward and outward from said riser; | The Accused Bow Products contain a second limb extending forward and outward from the riser. |
| (d) a first string guide journaled to said first limb at a first point, wherein said first string guide is a cam; | The Accused Bow Products contain a first string guide, which is a cam, which is journaled to said first limb at a first string point. For instance, the Accused Bow Products contain a first axle journaling the first string guide assembly, which is a cam, to the first limb. |
| (e) a second string guide journaled to said second limb at a second point; | The Accused Bow Products contain a second string guide, which is journaled to the second limb at a second point. For instance, the Accused Bow Products contain a second axle journaling the second string guide assembly to the second limb. |
| (f) a string extending between said first string guide and said second string guide; and | The Accused Bow Products contain a string extending between the first string guide and to the second string guide. |

| | |
|---|---|
| (g) a projectile engaged to said string on a side of said riser opposite a side of said riser where said first string guide and said second string guide are located | The Accused Bow Products contain a projectile, which engages the string on the side of the riser opposite the side of the riser where the first and second string guides are located. |

| Claim: 2 | The Accused Bow Products (Models #1, #2, and #3 of the Bear Archery confidential disclosure to Plaintiffs based on November 16, 2015 agreement) |
|---|---|
| The bow of claim 1, wherein said bow is a crossbow. | The Accused Bow Products are crossbows. |

| Claim: 3 | The Accused Bow Products (Models #1, #2, and #3 of the Bear Archery confidential disclosure to Plaintiffs based on November 16, 2015 agreement) |
|---|---|
| The bow of claim 2, further comprising a latch and trigger assembly operably coupled to said string. | The Accused Bow Products contain a latch and trigger assembly, which is operably couple to the string. |

20.   Upon information and belief, the acts of infringement by Bear Archery have been willful and deliberate, Bear Archery has made unlawful gains and profits from said infringement.

21.   Bear Archery's activities have been without express or implied license.

22.   Unless enjoined by this Court, Bear Archery will continue its willful infringement of the '693 Patent. As a result of Bear Archery's infringement, Plaintiffs have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Plaintiffs are

entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

### Count III - Willful Infringement

23.     Bear Archery's past and continuing infringement of the '693 Patent has been willful and deliberate. Its conduct warrants an award of treble damages pursuant to 35 U.S.C. § 284. This is also an exceptional case justifying an award of attorney fees to Plaintiffs pursuant to 35 U.S.C. § 285.

### Prayer for Relief

WHEREFORE Plaintiffs pray for judgment against Defendant for the following:

a. That this Court enter judgment that Defendants have infringed Patent '693;

b. That this Court enter judgment that Defendants have breached the Termination Agreement;

c. That this Court enter an injunction restraining Bear Archery from infringing the '693 Patent;

d. That this Court order Defendants to pay all damages sustained by Plaintiffs resulting from said infringement of the '693 Patent;

e. That this Court order Defendants to pay all damages sustained by Plaintiffs resulting from Bear Archery's breach of the Termination Agreement;

f. That this Court order an accounting with respect to sales by Bear Archery of infringing products;

g. That this Court order Bear Archery to pay increased damages up to three times pursuant to 28 U.S.C. § 284 in view of their willful and deliberate infringement;

h. That this Court find in favor of Plaintiffs that this is an exceptional case under 35 U.S.C. § 285 and award Plaintiffs their costs, including reasonable attorney fees and other expenses incurred in connection with this action;

i. That this Court order Bear Archery to pay Plaintiffs pre-judgment interest under 35 U.S.C. § 284 and post-judgment interest under 28 U.S.C. § 1961, on all damages awarded; and

j. That this Court grant Plaintiffs such further relief as this Court deems just and equitable.

### **Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand trial by jury of the issues herein.

> WHITFIELD & EDDY, P.L.C.
> 699 Walnut Street, Suite 2000
> Des Moines, Iowa 50309
> Telephone:  (515) 288-6041
> Fax:  (515) 246-1474
> Email: Helton@whitfieldlaw.com
> Email: Everett@whitfieldlaw.com
>
>
> By: */s/ J. Campbell Helton*
> J. CAMPBELL HELTON, AT0003425
>
> By: */s/ Van T. Everett*
> VAN T. EVERETT, AT0011512
>
> ATTORNEYS FOR PLAINTIFFS

Original Filed.